UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

EDWARD BERNARD BURGESS, JR.,

                Plaintiff,

v.                                        Case No. 20-cv-1444-pp

SARAH MOORE, C. VINSON,
WILLIAM DUCKERT, BRIAN STADLER,
and MILWAUKEE COUNTY SHERIFF'S OFFICE,

                Defendants.

**ORDER DENYING MOTION TO WAIVE FILING FEE (DKT. NO. 9), GRANTING MOTION TO EXTEND DEADLINE TO PAY INITIAL PARTIAL FILING FEE (DKT. NO. 9), DENYING SECOND MOTION TO WAIVE FILING FEE AND DENYING WITHOUT PREJUDICE MOTION TO APPOINT COUNSEL (DKT. NO. 10)**

Plaintiff Edward Bernard Burgess, Jr. is representing himself in this civil rights lawsuit, in which he alleges that the defendants filed to investigate and improperly dismissed his inmate grievances about the fact that he received legal mail too late to timely object to a magistrate judge's recommendation on his motion to suppress in his criminal case. The plaintiff filed the suit on September 15, 2020, along with a motion for leave to proceed without prepaying the filing fee (dkt. no. 2). On September 16, 2020, the court ordered that by October 7, 2020, the plaintiff must pay an initial partial filing fee of $14.83. Dkt. No. 5.

The Prison Litigation Reform Act (PLRA) requires a prisoner plaintiff to pay the full filing fee, but he may do so in installments if he satisfies certain requirements. 28 U.S.C. §1915(b)(1). One of those requirements is that he pay

1

an initial partial filing fee, the amount of which is determined by a formula in the PLRA.

The plaintiff did not pay the initial partial filing fee as ordered. Instead, he filed a letter asking to extend the deadline by which he had to pay it. Dkt. No. 6. The court granted the request and extended the deadline until November 20, 2020. Dkt. No. 7. The plaintiff then filed a motion asking for more time, stating, "I wish to waive the filing fee [and] if not, then please give me more time." Dkt. No. 9. He reiterated his request for waiver of the filing fee in another letter, which the court received on January 11, 2021. Dkt. No. 10.

Courts may not dismiss the lawsuit of a prisoner who lacks the ability to pay an initial partial filing fee. See 28 U.S.C. §1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."). The court has the authority to waive a plaintiff's initial partial filing fee under 28 U.S.C. §1915(b)(4), but only if a plaintiff lacks both the "assets" and the "means" to pay it. The Court of Appeals for the Seventh Circuit has explained that "[i]t is not enough that the prisoner lacks assets on the date he files." Newlin v. Helman, 123 F.3d 429, 435 (7th Cir. 1997), *overruled in part on other grounds by* Walker v. O'Brien, 216 F.3d 626, 628–29 (7th Cir. 2000), and Lee v. Clinton, 209 F.3d 1025, 1027 (7th Cir. 2000). If that were the case, a prisoner could avoid paying the initial partial filing fee by spending what is in his trust accounts before filing his lawsuit. A prisoner's "means" is construed broadly. A prisoner may lack "assets" but still have "means" to pay the fee.

Since December 30, 2019, the plaintiff has filed four lawsuits in this district: Case No. 19-cv-1901 (filed December 30, 2019); Case No. 20-cv-1352 (filed September 1, 2020); Case No. 20-cv-1375 (filed September 4, 2020); and Case No 20-cv-1444 (filed September 15, 2020). In each case, he has asked the court to waive the initial partial filing fee. In the first case—Case No. 19-cv-1901—Magistrate Judge William E. Duffin declined several times to waive the initial partial filing fee because in the six months before he filed the case, he'd received over $700 in deposits, but spent almost all of it on phone calls. Case No. 19-cv-1901 at Dkt. No. 16, pp. 2-3. Finally, on July 23, 2020, after over six months of the plaintiff asking the court to waive the initial partial filing fee and the court declining to do so, this court waived the fee and required the plaintiff to pay the full $350 filing fee over time. Id. at 9.

Less than two months later, on September 15, 2020, the plaintiff filed this lawsuit. After the court ordered the plaintiff to pay $14.83 as an initial partial filing fee, the court received on October 13, 2020 the plaintiff's letter asking the court to waive the initial partial filing fee or give him more time to pay it. Dkt. No. 6. While the plaintiff's trust account statement for January through August 2020 shows that as of the end of August he did not have enough money to pay the initial partial filing fee, that document also shows that the plaintiff has continued his habit of spending almost all of his money on phone calls. Dkt. No. 3. In the months leading up to the filing of the complaint in this case, the plaintiff received deposits of $50 in February, $45 in March, $90 in May, $110 in June and $200 in July—a total of $495. Id. He

3

also received "return credits" totaling $42.34. Id. He spent most that money on phone calls. Id. The events he describes in his complaint occurred in May and June 2020; in the months following June, the plaintiff received $310 in deposits—enough to pay the initial partial filing fee twenty times over. Though the plaintiff said in November that he had not received any money in months, dkt. no. 9, and said in January that he still could not pay the filing fees, dkt. no. 10, the fact remains that the plaintiff spent a significant amount of money on phone calls before filing this lawsuit—just like he did before filing the 2019 lawsuit.

The more recent trust account statement made clear to the court that the plaintiff had not been truthful with the court about not having enough money to pay the initial partial filing fee in Case No. 19-cv-1901. All along, the plaintiff has been receiving deposits—in some cases, significant deposits. Rather than use those deposits to pay court filing fees for cases he has chosen to file, he has used those deposits to make phone calls and buy things from the canteen. It is the plaintiff's prerogative to decide how he wants to spend his money. But his choice is between spending his money on phone calls or proceeding with his court cases. And he is obligated to tell the court the truth about the money he has available. On January 26, 2021, the court issued an order to show cause in that case, requiring the plaintiff to show cause why the court should not dismiss that case for the plaintiff's misrepresentations about his ability to pay the initial partial filing fee in Case No. 19-cv-1901. If the plaintiff does not

provide the court with a satisfactory explanation by March 5, 2021, the court will dismiss Case No. 19-cv-1901.

Courts must consider not only a plaintiff's current assets—the money he has right now—but the money he earned, received, etc. over the six months before he filed his lawsuit when calculating the initial partial filing fee and when determining whether it is appropriate to waive an initial partial filing fee. In the months leading up to the filing of this lawsuit, the plaintiff received more than enough to pay the initial partial filing fee.

Because the plaintiff has consistently used his deposited funds to pay for phone calls and canteen purchases, the court will not waive the initial partial filing fee, but it will grant the plaintiff's motion to the extent he asks for more time to pay the fee. If the plaintiff wants to proceed with this case, he must pay the initial partial filing fee of $14.83 in time for the court to receive it by the end of the day on **March 26, 2021.** If the plaintiff has depleted the funds in his regular account, he may pay the fee out of his release account if there are sufficient funds in that account. Alternatively, the plaintiff may voluntarily dismiss this lawsuit and refile it later (subject to the relevant statute of limitations). If the court does not receive the initial partial filing fee by the end of the day on March 26, 2021, the court will dismiss the case without prejudice.

The plaintiff also has asked the court to appoint a lawyer to represent him. Dkt. No. 10. He says he has searched for a lawyer to represent him on all the cases but was moved shortly thereafter. Id. at 1. He says that he cannot

5

prove he has looked for a lawyer because his paperwork was not moved with him when he was flown to Cimarron Correctional Facility in Cushing, Oklahoma. Id.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford a lawyer. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases." Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish, et al., 923 F.3d 486, 490 (7th Cir. 2019) (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second element, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d 871.

Because the plaintiff is in transit between facilities and his paperwork did not go with him, the court will take him at his word that he has tried to find a lawyer on his own. But the court concludes that it is too early in the litigation to determine whether the plaintiff needs a lawyer. The plaintiff has not provided any explanation for why he cannot litigate the case himself. He has not described his education level, his litigation experience, his psychological or physical limitations. The court knows from the plaintiff's federal criminal case that he is thirty years old, that as of the September 2020 presentence report he was in good health with no history of chronic conditions,

that he has a history of depression, that he completed the twelfth grade and that he was enrolled in some technical and college classes, though he earned no credits. <u>United States v. Burgess</u>, Case No. 19-cr-42 at Dkt. No. 117. So far, the court has been able to read and understand everything the plaintiff has filed. He communicates clearly. And at this stage of the case, there is nothing for the plaintiff to do but pay the initial partial filing fee. After that, the court will screen his complaint and, if the court believes he has stated a claim, will order the complaint served on the defendant. The defendant then will have an opportunity to answer. If the case proceeds and it appears to the court that the plaintiff is not capable of handling it himself, the court will revisit the plaintiff's request to appoint counsel.

The court **DENIES** the plaintiff's request to waive the initial partial filing fee. Dkt. No. 9.

The court **GRANTS** the plaintiff's alternative request for an extension of time to pay that fee. Dkt. No. 9.

The court **ORDERS** that the plaintiff must pay the initial partial filing fee of **$14.83** in time for the court to receive it by the end of the day on **March 26, 2021**. If the court does not receive the initial partial filing fee by the end of the day on March 26, 2021, the court will dismiss the case without prejudice.

The court **DENIES** the plaintiff's second request to waive the filing fee. Dkt. No. 10.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 10.

Dated in Milwaukee, Wisconsin, this 27th day of January, 2021.

**BY THE COURT:**

**HON. PAMELA PEPPER
Chief United States District Judge**